MATHEW KAEMMERER v. ROLLA WELLS, Receiver of United Railways Company, Appellant.

Division Two, June 11, 1923.

1. **PRACTICE: Demurrer to Plaintiff's Evidence: Waiver.** Defendant waives its right to insist that it was error to overrule its de-

murrer to plaintiff's evidence, offered at the close of plaintiff's case, by offering its own evidence. Said demurrer having been overruled, defendant must either stand upon the same, or it becomes the duty of the jury to consider all the evidence, that produced by defendant as well as that adduced by plaintiff.

2. APPELLATE PRACTICE: Demurrer to Whole Case: Negligence as Matter of Law. If fair-minded men of ordinary intelligence may honestly differ as to whether the facts in evidence show negligence upon the part of the plaintiff, the court cannot say as a matter of law that he was guilty of negligence barring his right to recover, but a demurrer to the evidence offered by defendant at the close of the whole case should be overruled and the question of plaintiff's negligence submitted to the jury.

3. NEGLIGENCE: Automobile: Approaching Street Car Crossing: Ordinary Prudence. The question whether the driver of an automobile entering upon a street-car track at a public-highway crossing was guilty of negligence under the present statute (Sec. 7585, R. S. 1919) must be determined by what an ordinarily careful and prudent person, possessed of the driver's knowledge of the general surroundings, would have done under the same or similar circumstances. Said statute repealed the Act of 1911 (Laws 1911, p. 330) requiring the driver of an automobile, in passing along or over public highways, to use the highest degree of care that a very careful person would use under like or similar circumstances, and substituted "a careful and prudent manner" and a rate of speed "not to endanger the property or life or limb of another," etc.

4. ———: ———: Opportunity for Seeing Approaching Street Car: Snowstorm. The fact that a street car approaching a highway crossing could be seen for six hundred feet on a clear day is not pertinent to the issue of ordinary care and prudence on the part of a driver of an automobile approaching the crossing in the midst of a severe snowstorm when all the evidence is to the effect that the rapidly-running street car could not be seen for more than seventy-five feet.

5. ———: ———: ———: ———: Anticipating Motorman's Negligence. The driver of an automobile, traveling northward in a public highway at a speed of from five to eight miles per hour, approached a street-railway crossing in the midst of a severe snowstorm; he looked carefully to see if a street car was approaching from either the east or west, and neither saw nor heard one; the headlight of his automobile was in operation, and the isinglass curtains did not obscure his view; when the front-wheels of the automobile were on the south track he saw a street car about seventy-five feet away coming from the west; he applied his

power, and the street car struck the hind wheel of the automobile, and knocked it over; the street car was running at the rate of fifteen to twenty-five miles an hour, and numerous witnesses testified it was not and could not be seen, because of the thick snow, more than seventy-five feet; there was a rest room or frame building ten or twelve feet south of the track, occupied by six or eight persons waiting to take passage on the street car, but it did not stop opposite the rest room, but ran on from one hundred and fifty to two hundred feet after it struck plaintiff's autmobile. *Held*, first, that the plaintiff had a right to assume that the motorman of the street car would run the same at a reasonable rate of speed, so that it would not collide with automobiles lawfully passing over the crossing; *second*, plaintiff was not bound to anticipate that the motorman, in the face of a blinding snowstorm, would run the street car at a reckless rate of speed, on a slippery and down-grade track, over a crossing where the traveling public, who had a legal right to use it, might be passing over it in a proper manner; and, *third*, the questions of plaintiff's negligence and of defendant's negligence were both questions for the jury to decide.

6. ———: Instruction: Assumption of Injuries: If Any. An instruction telling the jury that "if you find for the plaintiff, you should assess his damages in whatever amount you believe from the evidence would reasonably compensate him for the impairment of the vision of his left eye, if any, suffered as a direct result of his injury; for the displacement, if any, of the bones of his chest, suffered as direct result of his injury," etc., does not assume the existence of the injuries.

7. EXCESSIVE VERDICT: Ten Thousand Dollars. As a result of his injuries plaintiff was confined to his bed for about three weeks, and was incapacitated for his work for three months, and unable thereafter to do his usual amount of work; his left eye was swollen for a week, and a scar left under it, and he cannot read with it, and its vision is blurred at all times; the bones of his chest were displaced, and there is a constant dull pain in his chest, and the testimony of the experts were to the effect that his injuries are permanent. The defendant produced no testimony relating to the extent of his injuries, nor did it ask an instruction relating to the damages claimed. *Held*, that the verdict for ten thousand dollars is not so excessive as to require that a part of it be remitted as a condition of affirmance.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*Charles W. Bates, T. E. Francis, A. E. L. Gardner* and *Carter, Nortoni & Jones* for appellant.

(1) The court should have given appellant's demurrer to the evidence at the close of plaintiff's case, and having refused that, should have done so at the conclusion of all the evidence, because plaintiff's evidence shows him to have been guilty of contributory negligence as a matter of law. Evans v. Illinois Central Railroad Co., 289 Mo. 493; State ex rel. Hines v. Bland, 237 S. W. 1018; Spaunhorst v. United Railways Co., 209 Mo. App. 319, 328; Dey v. United Railways Co., 140 Mo. App. 461, 473; Freie v. Railway Co., 241 S. W. 671; Grear v. Harvey, 195 Mo. App. 11; McCreary v. United Railways Co., 221 Mo. 18, 31; Volkers Products Co. v. United Railways Co., 185 Mo. App. 310, 317; Kelsey v. Mo. Pac. Ry. Co., 129 Mo. 362, 372; Vandeventer v. Chicago & Alton, 177 S. W. 834; England v. S. W. Mo. Railroad Co., 180 S. W. 34; 3 Elliott on Railroads (3 Ed.) sec. 1663; Coal & Coke Co. v. Railways Co., 215 S. W. 914; Kelley v. Railroad Co., 88 Mo. 534; Hinze v. Railroad Co., 71 Mo. 640; Hayden v. Railroad Co., 124 Mo. 566. (a) "If plaintiff or the party injured, by the exercise of ordinary care under the circumstances, might have avoided the consequences of defendant's negligence, but did not, the case is one of mutual fault, and the law will neither cast all the consequences upon the defendant, nor will it attempt any apportionment thereof." Cooley on Torts (2 Ed.) 812; Moore v. Lindell Railway, 176 Mo. 528, 543. (b) If the view was obstructed by the saloon building, as plaintiff says it was, and plaintiff was familiar with the situation as he says he was, then this fact alone, instead of relaxing, enhanced the duty to exercise care for his own safety, and under such circumstances it is not enough to merely look and listen before passing the obstruction, but he must actually stop

and look and listen before going upon the track, and more especially so in view of the darkness and the snow, and the fact that he was riding within an enclosed automobile with outlook through mere dingy isinglass curtains. Hornstein v. United Railways Co., 195 Mo. 440, 450; State ex rel. Hines v. Bland, 237 S. W. 1020. (2) Respondent's instruction number 3 on the measure of damages is erroneous, in that it assumes injuries to plaintiff without requiring the jury to find that plaintiff received such injuries. It is always reversible error for an instruction on the part of plaintiff, without requiring a finding thereon, to assume an issuable fact in the case. Gamey v. Kansas City, 259 Mo. 654, 663. (a) Especially is this true when the instruction in a personal injury case assumes the issuable fact which constitutes the very crux to the right of damages, that is, the injury or injuries to plaintiff. Moon v. St. Louis Transit Co., 247 Mo. 237; Plummer v. City of Milan, 70 Mo. App. 598; Evans v. City of Joplin, 76 Mo. App. 20; Fullerton v. Fordyce, 120 Mo. 1. (b) The instruction is furthermore erroneous, because it authorized a recovery as for permanent injuries, without limiting such to the injury to plaintiff's chest and his left eye, concerning which alone there is evidence as to permanent injury. Lebrecht v. United Railways Co., 227 S. W. 112; Smiley v. Railways Co., 160 Mo. 636; Wilbur v. Railroad, 110 Mo. App. 689; Perkins v. United Railways Co., 243 S. W. 224. (3) The verdict of ten thousand dollars on the evidence in this case is excessive, and in any view it should be reduced by *remittitur*. Dominick v. Mining Co., 255 Mo. 463; Clifton v. Railroad, 232 Mo. 708; Hulse v. Railroad, 214 S. W. 250; Davenport v. Electric Co., 242 Mo. 111. (a) Furthermore, the circumstances and facts in evidence are insufficient to show with reasonable certainty causal connection between the impaired condition of plaintiff's left eye, which was not discovered until June 5th, five months after the accident, which occurred on January 8, 1920, and the accident, especially in view of the fact

that plaintiff's doctor who treated him the night of the injury and for three months thereafter did not discover any impairment of injury to his eye. Gaty v. United Railway Co., 227 S. W. 1041-1046, and authorities, supra. (4) The excessive speed of defendant's car was not the proximate cause of injury. Although there be negligence, such is not actionable negligence unless there is causal connection between the negligent act and the injury. Lackey v. United Railways Co., 288 Mo. 146; Crone v. United Railways Co., 236 S. W. 654; Battles v. United Railways Co., 178 Mo. App. 596, 614; State ex rel. Newspaper Assn. v. Ellison, 176 S. W. 11; King v. Wabash Railroad Co., 211 Mo. 1, 14. (a) There being neither statutory nor ordinance regulation touching the rate of speed at which the street car might be run in the country district, no rate of speed was negligence *per se.* Kreis v. Mo. Pac., 148 Mo. 321, 328. (b) The street car being seventy-five feet away, approaching at twenty miles per hour, and plaintiff's automobile being upon the first rail of the track, traveling at five miles per hour, would have made it across out of danger, except for the skidding and sudden turn of the automobile which impeded its progress until the street car caught the left rear wheel of the machine. King v. Wabash Ry., 211 Mo. 14.

*John E. Mooney* and *George Barnett* for respondent.

(1) The court did not commit error in refusing to give appellant's demurrer to the evidence at the close of plaintiff's case, and at the close of all the evidence. The evidence in the case does not convict plaintiff of contributory negligence as a matter of law. It was plainly a question for the jury as to whether plaintiff exercised ordinary care for his own safety in undertaking to cross the track. Clooney v. Wells, 252 S. W. 72; State v. Reynolds, 226 S. W. 569; Monroe v. Chicago & Alton, 280 Mo. 490; Mason v. United Rys. Co., 246 S. W. 318; Caldwell v. Payne, 246 S. W. 312; Campbell v. St. Louis &

Suburban Ry. Co., 175 Mo. 161; Stepp v. Railway, 211 S. W. 730; Petty v. Ry. Co., 88 Mo. 306; Engleman v. Met. Street Railway Co., 133 Mo. App. 514; Sandry v. Hines, 226 S. W. 648; Ruenzi v. Payne, 208 Mo. App. 113; Bruckman v. United Railways Co., 242 S. W. 686; Evy v. Davis, 244 S. W. 956; McDonald v. United Railways Co., 245 S. W. 559; Hamm v. Railway Co., 245 S. W. 1109; Hooderpile v. United Railways Co., 236 S. W. 913; Draper v. Dunham, 239 S. W. 883; Eyash v. United Railways Co., 229 S. W. 223; Moore v. Railroad, 157 Mo. App. 53, 62. (a) In passing upon defendant's demurrer to the evidence, the evidence should be viewed in the light most favorable to the plaintiff, and all reasonable inferences that could be indulged, arising from the evidence offered either by plaintiff or defendant, should be accepted. It is not proper to select a single excerpt from the testimony and build a conclusion entirely upon it. If there were discrepancies or contradictions in the testimony of the witnesses it was for the jury to pass upon the same. Sandry v. Hines, 226 S. W. 648; Bruckman v. United Rys. Co., 242 S. W. 686; Fritz v. Railway Co., 243 Mo. 77; Stauffer v. Railway Co., 243 Mo. 316; Peters v. Lusk, 200 Mo. App. 379; Schulz v. Railway Co., 223 S. W. 757; Simpson v. Wells, 237 S. W.. 523; Burton v. Holman, 231 S. W. 632; Lamb v. Mo. Pac. Ry. Co., 147 Mo. 187. (b) It is not, under all circumstances, necessary for a driver approaching street railroad tracks to stop. Whether, under the facts and circumstances of the case, it was necessary for the plaintiff, in the exercise of ordinary care, to actually stop was a question for the jury. Monroe v. Chicago and Alton, 280 Mo. 490; Barrett v. Delano, 187 Mo. App. 501, 508; Sandry v. Hines, 226 S. W. 648. (2) Respondent's instruction No. 3, on the measure of damages, was not erroneous. (a) It did.not assume the existence of plaintiff's injuries. The instruction must be read in connection with instruction No. 1, and instruction No. 1 required a finding of the injuries before there could be any finding for plaintiff.

Callicotte v. Rock Island Ry. Co., 274 Mo. 694; Powell v. Railroad, 255 Mo. 453. (b) The instruction was not erroneous for permitting the jury to consider whether plaintiff's injuries were of a permanent or temporary nature. There was an abundance of testimony as to the permanency of plaintiff's injuries. In fact, the undisputed testimony was to the effect that the injuries were permanent. West v. Railroad, 187 Mo. 364; Hurst v. Burlington Ry. Co., 280 Mo. 570; Scott v. Metropolitan Street Ry. Co., 138 Mo. App. 196. (c) Even though the instruction was somewhat too general in failing to restrict the reference of permanent injuries to the particular elements of damage resulting permanently, the appellant is in no position to complain, for the reason that it failed to ask an instruction of its own limiting the instruction in the manner desired by appellant. Jones v. Frisco Ry. Co., 287 Mo. 81; Martin v. S. T. & T. Co., 217 S. W. 836; Powell v. Railroad, 255 Mo. 454; Minter v. Bradstreet Co., 174 Mo. 491; Browning v. Railway, 124 Mo. 71. (3) The verdict for $10,000 was not excessive. Jackman v. Railway Co., 231 S. W. 978; Adams v. Railroad Co., 287 Mo. 535; Vorley v. Columbia Taxicab Co., 240 S. W. 228; Dutcher v. Wabash Ry. Co., 241 Mo. 137. The causal connection between the impaired condition of plaintiff's left eye and the injuries was sufficiently established. In fact, the testimony on this point was positive and direct. In answer to defendant's direct question Dr. Howard stated that the condition of plaintiff's left eye resulted from his injuries. Gaty v. United Railways Co., 227 S. W. 1041; Wagner v. Railroad Co., 209 Mo. App. 133; Lane v. Railways Co., 228 S. W. 870; Lyons v. Railroad, 253 Mo. 143. (4) The evidence was amply sufficient to justify the jury in drawing the reasonable inference that the excessive speed of the car was the proximate cause of the injury. Plaintiff was almost over the track when struck, and it follows necessarily that if the car had been approaching at a proper rate of speed the plaintiff would have had ample time to

cross the track.  O'Sullivan v. Kansas City Rys. Co., 237
S. W. 843; James v. United Railways Co., 236 S. W. 1089;
Niehaus v. United Railways Co., 165 Mo. App. 606; Tay-
lor v. Met. St. Railway Co., 256 Mo. 191.  (a)  The rate
of speed at which the car approached the track was plain-
ly common-law negligence.  Taylor v. Met. St. Railway
Co., 256 Mo. 191; Holden v. Mo. Railway Co., 177 Mo.
456.  (b)  The defendant's negligence was the proxi-
mate cause of the injury.  In the first place, from the evi-
dence, the jury may have believed the car as an actual
fact did not skid.  The plaintiff stated that he did not
know whether it skidded or not.  In the second place,
even if the car had skidded, this is not such a circum-
stance as would have necessarily constituted the proxi-
mate cause of the injury.  This question has been em-
phatically disposed of by this court.  Clooney v. Wells,
252 S. W. 72; Jones v. United Railways Co., 236 S. W.
1091; O'Sullivan v. Kansas City Railways Co., 237 S.
W. 843; Niehaus v. United Railways Co., 165 Mo. App.
606; Taylor v. Street Railway Co., 256 Mo. 191.

RAILEY, C.—On April 17, 1920, the above named
plaintiff commenced this action in the Circuit Court of
St. Louis County, against Rolla Wells, as receiver of the
United Railways Company of St. Louis, a corporation,
to recover damages alleged to have been sustained by
him while driving an automobile, which came in collision
with a street car operated by said defendant.  The amend-
ed petition, on which the case was tried, charges the
defendant with common-law negligence, in running its
street car, which collided with plaintiff's automobile, at
an excessively high and dangerous rate of speed, at a
place where said street-car line crossed a public thorough-
fare, during a severe snowstorm, and that said negli-
gence directly caused said collision and injuries to plain-
tiff.

The defendant in its answer charged the plaintiff
with contributory negligence, which was denied in the

reply.   The answer admitted that Rolla Wells, as receiver, was operating the street railway aforesaid at the time of said collision.

The location of the accident, and the facts connected therewith, become material, as it is urged the plaintiff should have been nonsuited by the trial court.

The accident occurred about 6:30 to 7:00 o'clock in the evening of January 8, 1920.  The exact directions of the public roads where the accident occurred are not clearly shown, but we think, in a general way, it appears that the Natural Bridge Road generally runs east and west.  The general direction of Kienlen Avenue is northwardly, and it terminates at the intersection with the Natural Bridge Road.  With a slight jog in the intersection of the last-named road, Kienlen and Jennings Road form a continuous road, running practically north and south.  The defendant at date of accident was operating a double track between Ferguson and the city of St. Louis.  Cars passing west or northwest traveled over the north track, while those going from Ferguson to St. Louis used the opposite track.  At the time of plaintiff's injury, he was seated on the left side of the forward seat of a touring car, and was driving same, while *en route* from his place of business to his home at Pine Lawn, outside of the city, where he resided.  Mr. Michael A. Clooney, a stranger to plaintiff, on invitation of the latter, got into plaintiff's automobile and was occupying a rear seat in said car when the accident occurred, just outside the city of St. Louis.  One of defendant's cars, traveling east from Ferguson to St. Louis on the south track aforesaid, struck the rear wheel of plaintiff's automobile, on the left-hand side of the foremost seat, where plaintiff was riding and driving at the time.  The evidence tends to show, that plaintiff had resided at Pine Lawn for several years prior to the accident, some two or three blocks from said crossing, and was familiar with the same.  The Natural Bridge Road was about sixty feet in width and Kienlen Avenue about fifty feet

in width.   There stood at the time of the accident, immediately south and west of the railroad right-of-way, and north of the Natural Bridge Road, a two-story frame building, occupied as a soft-drink establishment.   The evidence tends to show that the frame building supra stood from ten feet to fourteen and a half feet south of the in-bound track.   The plaintiff was coming from the south, and going north at time of accident.   At the edge of the railway right-of-way, on the south side of the crossing of Natural Bridge Road, and on the east side of Kienlen Avenue, there was a small station or shelter house for the accommodation of waiting passengers.

Plaintiff in his own behalf, testified in substance, that he looked in all directions, as he approached the crossing, to see if there was a vehicle or car approaching; that he never heard or saw a car, until the front part of his machine was practically on the track; that when his front wheels were on the track, he looked and saw that the car was only about seventy-five feet away, and he had no chance to stop; that he put on the power to get across, and the street car hit the rear end of his machine; that before he actually got on the track, he had looked north while he was from five to ten feet from the track.   On cross-examination, plaintiff testified that he was traveling between five and eight miles per hour as he approached the track; that there was a deep snow on the ground, and it was very rough; that he had good brakes on his car and they were in good shape; that on a night of that kind, if the car did not skid, while traveling from five to eight miles per hour it could have been stopped in about eight feet; that there were no curtains on the car, it was an all-weather top with isinglass curtains on the sides; that he looked through this isinglass; that it was snowing pretty hard; that he had a regular form of headlight on his car; that the frame building was about ten feet from the south track; that when standing ten feet from the south track you can see to the top of the hill about six hundred feet; that standing fifteen feet

south of the track you could possibly see two hundred feet west up the track; that he did not think he came to a full stop before being struck; that he slowed down before going over the tracks; that his car skidded when he put his foot on the gas.

Edwin Otto testified, in substance, that he was in the rest house with seven or eight other people waiting to take the car that injured plaintiff; that it was snowing; that the car ran by the station one hundred and fifty to two hundred feet; that it was going awfully fast.

Edward Aydelotte testified that he was in the rest house waiting to take passage on this car that struck plaintiff; that it struck the left hind wheel of plaintiff's car, after it had almost gotten across the track, and it turned the automobile completely around, facing south.

Theodore Boeming testified that he was also at the rest house, and saw the street car before it collided with plaintiff's car; that he was looking straight at it; that it was snowing; that the street car was about seventy-five feet away when he first saw it; that he saw the automobile, when from five to eight feet of the track; that plaintiff was going about five miles per hour and pulled onto the track; that the street car was running about twenty miles per hour, struck the left hind wheel of automobile and turned it clear around; that the street car did not stop for passengers; that it ran past the station about one hundred and seventy-five or two hundred feet. On cross-examination, he said the snow was falling rapidly; that the tracks were covered with snow; that plaintiff almost stopped his car, but did not stop.

August Bruegge was at the rest house, and located the scene of the accident as being near the center of Natural Bridge Road. He testified that the street car did not stop at the station, but ran about one hundred and seventy-five or two hundred feet beyond it; that the street car was going fifteen to twenty miles per hour as it went by the station; that there was a heavy snow that night.

The plaintiff, and certain witnesses, testified as to the injuries complained of, which will be considered later.

The evidence for defendant was as follows:

Herbert H. Windt, a civil engineer, testified that he measured the distance from the south track to the frame house on the south, and found the distance fourteen and one-half feet; that you could see a car from the center line of the crossing about six hundred and sixty-five feet, while standing about seventeen feet south of the track. On cross-examination, witness testified that the sun was shining when he made his estimates.

T. R. Shaffer testified, in substance, that he was on the street car in question, and that when his car got within about seventy-five feet of the crossing he observed the spot-light of a machine coming over Kienlen Avenue, and very near turning around the corner, and seemed to keep on coming toward the track; that it seemed to him the car stopped and moved again; that about this time the power of the street car was off, the brakes were applied, and it seemed to him like they were sliding on the rail; that he thought the automobile stopped about ten feet from the track, and then started up again; that the street car was then about forty feet away. On cross-examination, witness testified that he was on the front end of the street car with the motorman; that the door between the platform and the car was closed, and the curtain was drawn down; that it was snowing very hard; that he never saw the automobile until they were within seventy-five feet of it; that the lights on the automobile were lighted; that the street car was traveling about twenty miles per hour until it got within seventy-five feet of the automobile, and was going about fifteen miles per hour when it struck it; that he could not say whether the street car was going forty-five miles an hour; that the street car was bouncing up and down before it got within seventy-five feet of crossing.

Henry C. Jessen testified that he was the conductor in charge of the car which struck plaintiff, and was on the rear platform; that he didn't see the accident, but felt the brakes on.

It was conceded that the motorman in charge of the car that struck plaintiff was at the date of trial in Portugal.

The plaintiff's deposition, covering nearly twenty-five pages, was taken by defendant, and read in evidence by it. We find no substantial difference between plaintiff's evidence given at the trial, as heretofore set out, and that read from said deposition.

The testimony relating to respondent's injuries will be considered later.

Eleven of the jurors returned a verdict in favor of plaintiff for $10,000, and judgment was entered accordingly.

The instructions and rulings of the court, as far as necessary, will be considered in the opinion.

The cause was appealed by defendant to this court.

I. The appellant assigns as error the action of the trial court in overruling its demurrer to the evidence at the conclusion of plaintiff's case. We have repeatedly held that where a demurrer to plaintiff's **Demurrer to Evidence: Waiver.** evidence is overruled, the defendant, by offering its own evidence, instead of standing on its demurrer, waives its right to object to the ruling of the court supra, as it then becomes the duty of the jury to consider all the testimony in passing upon the case. [State v. Hembree, 242 S. W. (Mo.) l. c. 913-14; State v. Barker, 242 S. W. (Mo.) l. c. 409; State v. Wilson, 237 S. W. (Mo.) l. c. 778; Burton v. Holman, 288 Mo. l. c. 78; State v. Mann, 217 S. W. (Mo.) l. c. 69; Lareau v. Lareau, 208 S. W. l. c. 243.] The above assignment in regard to the overruling of defendant's demurrer to the evidence at the conclusion of plaintiff's case is overruled.

II. Appellant contends, in its second assignment of error, that the trial court erred in refusing to sustain its demurrer to the evidence at the conclusion of the whole case, on the ground that plaintiff was guilty of negligence as a matter of law. In a case of this charac-

ter, if fair-minded men of ordinary intelligence may honestly differ as to whether the facts in controversy show negligence upon the part of plaintiff, it then becomes peculiarly a question for the jury, and the court has no right to dispose of same as a matter of law.

Under Acts of 1911, Laws 1911, page 330, the driver of an automobile was required to use the highest degree of care that a very careful person would use under like or similar circumstances, in passing along or over public highways. Many of the cases relied on by appellant fell within the purview of above law, and were decided accordingly. The above act was repealed, and Section 7585, Revised Statutes 1919, enacted in lieu thereof, which reads as follows:

"Every person operating a motor vehicle on the public highway of this State shall drive the same in a careful and prudent manner, and at a rate of speed so as not to endanger the property of another or the life or limb of any person: Provided, that a rate of speed in excess of twenty-five miles an hour for a distance of one-half a mile shall be presumptive evidence of driving at a rate of speed which is not careful and prudent."

It is manifest from reading the testimony that plaintiff was never at any time, on the afternoon of the accident, violating the above section so far as the rate of speed was concerned. The question as to his negligence in coming upon the track must be determined by what an ordinarily careful and prudent person would have done under the same or similar circumstances while possessed of his knowledge as to the general surroundings at the date of injury. It might be true, that on a clear day, as testified to by defendant's engineer, a person approaching the track, as plaintiff was at the time of injury, might have seen, had he looked at any point within fifteen feet of the track, a car approaching from the west, while six hundred feet away. This estimate, however, was without probative force, as applied to the facts of this case, as a severe snow storm was raging, the

sun was not shining, and the ground was covered with snow. The undisputed evidence shows that on the evening of said accident, with the above conditions existing, the street car could not be seen while one hundred feet or more away. The plaintiff testified that the street car was about seventy-five feet away when he first saw it. Theodore Boeming, a disinterested witness, was in the rest room, and was looking up the track, expecting the car, when he first saw it seventy-five feet away. T. R. Shaffer, a witness for defendant, who was with the gripman, testified that when he was within seventy-five feet of the crossing he saw the spot light of the automobile moving toward the track. The jury were, therefore, justified by the undisputed evidence in finding that the approaching street car, on account of said snowstorm, could not be seen for a greater distance than seventy-five feet from the crossing. If the frame house had not been there at all, the same result would have followed, as the car under such conditions could not be seen for more than seventy-five feet, on account of the snowstorm. What duty devolved upon plaintiff in approaching said crossing, under the circumstances aforesaid? He was bound to anticipate a street car might be coming, but in the absence of evidence to the contrary he had the right to assume that the gripman in charge of the car would run the same, while approaching a public crossing of that character, at a reasonable rate of speed, so that it might not collide with persons lawfully passing over said crossing. In other words, the plaintiff, in the absence of evidence on the subject, was not bound to anticipate that defendant's gripman, in the face of a blinding snowstorm, would approach said crossing at a reckless rate of speed, on a slippery and down-grade track, when the traveling public who had the legal right to use said crossing were or might be passing over the same in a proper manner.

Mr. Shaffer, defendant's witness, testified that in his opinion the street car was running eighteen to twenty miles per hour, until it got within seventy-five feet of

the crossing, and then slowed down to about fifteen miles per hour. This witness, however, testified on cross-examination, as follows:

"Q. As a matter of fact, it was going forty-five miles an hour, wasn't it? A. I cannot say.

"Q. He [it] was going very fast, wasn't it? A. I can't say that it was; I couldn't estimate the speed.

"Q. The car was bouncing up and down, wasn't it? A. Yes, sir; it was."

This witness, who was on the front platform with the gripman, testified that when they came within seventy-five feet of the crossing, they had every means applied; that the power was off and the brakes were applied, and it seemed to him like they were sliding on the rail.

The uncontradicted evidence of those in the rest room disclosed that the street car was traveling with so much momentum that when it struck the left hind wheel of the automobile, it turned the machine clear around, and ran on one hundred and fifty to two hundred feet before it stopped. On the other hand, the plaintiff testified that he looked carefully for the approach of the car and could not see it until it got within seventy-five feet of the crossing. His isinglass curtains did not obscure his view, as he saw the same distance, seventy-five feet, as did Boeming and Shaffer.

The plaintiff, after looking for the street car and failing to see it, continued with his car at a moderate rate of speed, and under control, to cross the track. When he finally saw the street car coming about seventy-five feet away, and realizing that he could not back the car in time to prevent a collision, he went on across, and nearly cleared the track before the collision occurred. Can any one doubt, if defendant's gripman had been running with his car under control, the plaintiff could have crossed safely and without danger?

In the face of the foregoing facts, we are asked to declare, as a matter of law, that plaintiff was not entitled to have his case submitted to a jury. In our opin-

ion, it would be a travesty upon the law if we should hold, on the facts before us, that he was not entitled to a jury trial. We do not deem it necessary to cite authorities in support of the above conclusion. We are of the opinion that the trial court committed no error in overruling defendant's demurrer to the evidence at the conclusion of the case, and in submitting to the jury the issues whether plaintiff and defendant were each guilty of negligence.

III. It is insisted by appellant, that plaintiff's instruction numbered three is erroneous. It reads as follows:

"The court instructs the jury that if you find for the plaintiff, you should assess his damages in whatever amount you believe from the evidence would *Instruction.* reasonably compensate plaintiff for the impairment of the vision of plaintiff's left eye, if any, suffered as a direct result of plaintiff's injury; for the displacement, if any, of the bones of plaintiff's chest, suffered as a direct result of plaintiff's injury; for the wounds, if any, or lacerations, if any, of plaintiff's face, suffered as a direct result of his said injury; for the pain of body, if any, which plaintiff has suffered or will in the future, in all reasonable probability, suffer as a direct result of his said injury; and in assessing plaintiff's damages, if any, you may consider whether plaintiff's injuries are of a permanent or temporary nature."

In Powell v. Railroad, 255 Mo. l. c. 453-4, LAMM, J., completely answered the criticism of defendant's counsel leveled against said instruction, as follows:

"It is argued that the first instruction assumes the injuries caused the death of Frederick. We may be pardoned for not agreeing with counsel. It says '*if* you find for plaintiff, *then*,' etc., and makes no assumption at all. It is only an instruction on the measure of damages in the contingency and on the hypothesis the jury first find for plaintiff. The elements to be considered by the

jury in making this finding for plaintiff, if they do, are not dealt with at all by the instruction and are not usually dealt with in one on the mere measure of damages, filling no office in instructing on the whole case.

"Furthermore, and most of all, defendant below stood mute and asked no instruction on the measure of damages. It pitched its battle at other points. It exhausted its solicitude elsewhere and on other questions. It may not now, with its corporate heart bowed down with the woe of defeat, and its corporate eyes washed and brightened by the tears of affliction, elicit appellate interest in a matter it cared nothing about below."

The above pronouncement is followed in later cases, some of which are as follows: Breen v. U. Rys. Co., 204 S. W. (Mo.) l. c. 523-4; Morton v. Lloyd Const. Co., 280 Mo. l. c. 381-2; Baker v. McMurry Contr. Co., 282 Mo. l. c. 705; Jones v. Frisco Ry. Co., 287 Mo. l. c. 81-2; Rigley v. Pryor, 290 Mo. 10.]

The above assignment of error is without merit and overruled.

IV. It is contended by appellant that the verdict for $10,000 in this case is excessive, and, in any event, that it should be reduced by a *remittitur*. We have been considering this subject in so many cases re-

Excessive Verdict.

cently that it would serve no good purpose to set out the facts in detail, relating to plaintiff's injuries. The defendant produced no testimony relating to the extent of plaintiff's injuries, nor did it even ask an instruction relating to the damages claimed. Plaintiff's evidence tends to show that he was in bed about three weeks; that he was incapacitated for his work during a period of about three months, and not able to do much work after that time; that his eye was swollen for about one week and a scar left under his left eye; that he cannot read with his left eye, and the vision of same is blurred when he looks at a person; that there is a constant dull pain on acount of an injury to his chest,

etc. The expert testimony tends to show that the injuries to plaintiff are permanent. He appears to have been in good physical condition before the accident. The defendant made no request for an examination of plaintiff by a physician. There is nothing in the record to indicate that the jury were actuated by either passion, prejudice, or partiality, in passing upon the merits of the case. In view of the foregoing, we are of the opinion, that the above assignment should be overruled.

V. We have read with a great deal of interest the opinion of GRAVES, J., in the companion case of Michael A. Clooney v. Rolla Wells, Receiver, handed **Companion Case.** down on April 6, 1923, and to be found in 252 S. W. 72, in which all the judges of Division Number One concurred. The plaintiff, in the above case, was riding as an invitee in the car of Mathew Kaemmerer, and occupying the rear seat of same. Having learned that a motion for a re-hearing was pending in the Clooney Case, we did not quote from the opinion therein, but have reached the same conclusion, on substantially the same facts.

Without extending this opinion further, we hold, that no error was committed during the progress of the trial which would warrant us in disturbing the verdict of the jury herein.

The judgment below is accordingly affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.